IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

STEVEN BIVENS, *on behalf of himself and all persons similarly situated*,

     Plaintiff,

v.

SELECT PORTFOLIO SERVICING, INC.,

     Defendant.

CIVIL ACTION FILE NO.

1:17-cv-760-ELR-JKL

## ORDER AND NON-FINAL REPORT AND RECOMMENDATION

This putative class action, which is Plaintiff Steven Bivens's fourth case against Defendant Select Portfolio Servicing, Inc. ("SPS") alleging violations of the Real Estate Settlement Procedures Act ("RESPA"), is presently before the Court on SPS's motion to dismiss [Doc. 7]. For the following reasons, the Court **RECOMMENDS** that the motion to dismiss be **DENIED**. The Court also **ORDERS**, pursuant to the parties' request for a scheduling conference [Doc. 15 at 8], that this matter be set for a scheduling conference. The parties shall appear before the undersigned for a scheduling conference in the United States Courthouse,

Richard B. Russell Building, 75 Ted Turner Drive, at Atlanta, Georgia, on the **4th day of January, 2018**, at Courtroom 1834, at **10:00 a.m.**

## I.   MOTION TO DISMISS STANDARD

In evaluating a Rule 12(b)(6) motion to dismiss, a court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   A complaint need not provide "detailed factual allegations," but it must provide factual allegations sufficient to set forth the plaintiff's entitlement to relief. *Twombly*, 550 U.S. at 555.  Providing only "labels and conclusions" is insufficient, "and a formulaic recitation of the elements of a cause of action will not do." *Id.* The court is not required to accept as true legal conclusions couched as factual statements. *Iqbal*, 556 U.S. at 678.

Generally, a court may not consider matters outside the pleadings when evaluating a motion to dismiss without converting the motion to a motion for summary judgment. *See* Fed. R. Civ. P. 12(d); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368-69 (11th Cir. 1997).  An exhibit to a pleading is part of the pleading, however, and may be considered. *See* Fed. R. Civ. P. 10(c).

2

## II.    THE COMPLAINT

In his class action complaint, Bivens alleges that he took out two loans from Mortgage Lenders Network, USA, Inc. and, as security for the loans, executed security deeds to property in Sugar Hill, Georgia.  (Compl. [Doc. 1] ¶ 4.)  SPS later "represented" to him that it was the servicer of his first loan.  (*Id.* ¶ 5.)  On June 30, 2016, he faxed a letter to SPS requesting information related to the servicing of his account.  (*Id.* ¶ 6; Compl. Ex. A [Doc. 1-1].)  He asserts that the June 30, 2016 letter was a qualified written request ("QWR") for purposes of RESPA.  (Compl. ¶ 6)  The letter stated:

> In a letter I sent you on April 2016, I asked again for information, and you sent some information, but did not send some of the requested information.  I have detailed the missing information below.
>
> You still have not completely responded to the question below (especially you have not provided the documents asked for), so I am asking for the rest of the information again:
>
>> *Please tell me who are the different servicers, subservicers and master servicers, who currently are involved with this loan and provide documents showing their authority and responsibilities regarding this loan and when their involvement started.*
>
> Please list all the charges that comprise the $9,999.99 charge in the account history, the date of the charge and explain the reason for each of the charges.  Also please list the charges that comprise the $863.07

charge in the account history, the date of the charge and explain the reason for each of the charges.

Please describe all of the attempts you have made to obtain the account history for the time before January 16, 2007, and when you made each of these attempts.

You refused to send a copy of the documents in the custodial file, even though you, the servicer, took them from the custodial bank and have them in your possession.  I am again requesting that information.

You have also refused to send me any documents showing when the current holder of the note became the current holder of the note.  I am again requesting that information.

I am asking again for the rest of the trust agreement that you sent the front page from, especially the part that shows whether my loan is in the trust.

Please explain what "title cure costs" are and why they were charged to my account.

Finally, please send me copies of all the property inspection reports.

SPS responded by letter dated July 29, 2016.  (Compl. ¶ 7; Compl. Ex. B

[Doc. 1-2].)  In its response, SPS stated,

The issues presented in your letter are part of an ongoing litigation. SPS is aware of the issues presented in your letter and would like to work with you to reach a resolution.  Due to the current litigation, SPS believes that it would be more appropriate to refrain from providing a detailed response to you at this time.  We encourage you to continue working with our legal counsel to determine the available resolution options.

> We appreciate the opportunity to address the issue(s) noted in your inquiry and consider this matter resolved. . . .

(Compl. ¶ 7; Compl. Ex. B.)

Bivens alleges that this response was inadequate because it did not provide any of the information requested in his letter and therefore violated RESPA, 12 U.S.C. § 2605(e). (Compl. ¶ 7.) On August 3, 2016, he traveled to an Office Depot and faxed another request for the same information to SPS. (Compl. ¶ 8; Compl. Ex. C [Doc. 1-3].) He asserts that, in sending the August 6, 2016 follow-up letter, he accrued actual damages of travel and fax expenses. (Compl. ¶ 10.) Moreover, SPS sent him a response dated October 6, 2016, which Bivens also contends did not fully respond to his request for information and therefore violated RESPA. (Compl. ¶ 9; Compl. Ex. D [Doc. 1-4].) He further alleges that SPS failed to respond to his previous QWRs sent on March 26, 2015, February 4, 2016, April 20, 2016, and October 13, 2016. (Compl. ¶ 11.) He demands actual and statutory damages and attorney's fees. (Compl. ¶ 23.) Bivens's complaint also includes allegations related to class certification. (*Id.* ¶¶ 12-22.)

### III.   THE PARTIES' ARGUMENTS

On April 7, 2017, SPS moved to dismiss the class action complaint.  [Doc. 7.]  SPS argues that it adequately responded to Bivens's letter by informing him that it was duplicative of the requests for information at issue in a lawsuit against SPS that Bivens filed in 2015, which is presently pending in this Court, *see Bivens v. Select Portfolio Servicing, Inc.*, No. 1:15-cv-4325-ELR-JKL (N.D. Ga. 2015). [Doc. 7-1 at 9-22.]   SPS further argues that most of Bivens's requests for information did not relate to the servicing of his loan and therefore SPS had no duty to respond.  [*Id.*]  Also, SPS provided Bivens much of the information he requested in its previous responses to his previous QWRs.  [*Id.*]

Even assuming some of Bivens's requests for information in the June 30, 2016 letter were related to the servicing of his loan, SPS argues, he cannot show that he was damaged by SPS's alleged failure to respond adequately because his requests for information and the sufficiency of SPS's responses to those requests were already the subject of ongoing litigation in this Court.  There was no need for him to send a QWR to SPS when the sufficiency of SPS's response was being tested in his 2015 case.  [Doc. 7-1 at 17-18.]  Bivens also did not identify any reason for his requests for information that was related to making loan payments or an error in his account.  [*Id.* at 18-19.]  SPS argues that Bivens cannot make the requisite

6

showing for statutory damages in the absence of actual damages, and the Court cannot certify a class because Bivens has no viable individual claim.[1]  [*Id.* at 19-21, 24.]

Bivens responds that SPS's letter dated July 29, 2016 did not notify him that SPS was relying on the duplicative-information exception in Regulation X, and furthermore, SPS had not previously responded to all of the requests in the June 30, 2016 letter.  [Doc. 9 at 1-5.]  He also argues that SPS was required to respond to each request for information in the June 30, 2016 letter because those requests related to servicing.  [*Id.* at 6-8.]  He asserts that the Court should read § 2605(e)'s requirement that QWRs relate to the servicing of the loan expansively, because "all of the information that servicers have, or have access to, is related to servicing." [*Id.* at 8.]  He also argues that SPS failed to adequately respond to each of his requests for information.  [*Id.* at 8-16.]  Bivens contends that he suffered actual

---

[1] SPS also argues that Bivens's complaint should be dismissed because he has engaged in impermissible claim-splitting, because his 2015 case challenging SPS's response to a March 2015 request for information was pending when he filed the instant complaint.  [Doc. 7-1 at 21-24.]  The Court does not find that dismissal for claim-splitting is appropriate here.  The issue in this case is whether SPS responded appropriately to Bivens's June 30, 2016 letter.  Different correspondence between Bivens and SPS is the subject of Bivens's 2015 case, even if some of the same evidence may be at issue in both cases.

damages of fax and travel expenses because he had to send a follow-up QWR to obtain a response to his June 30, 2016 letter.  [*Id.* at 16.]

SPS has filed a reply.  [Doc. 12.]

## IV.   DISCUSSION

### A.   The Court may consider the alleged QWRs and responses thereto that SPS attached to its motion to dismiss because they are central to Bivens's complaint and their authenticity is not in dispute.

In his complaint, Bivens put in issue the sufficiency of SPS's responses to several other alleged QWRs, namely, correspondence sent on March 26, 2015, February 4, 2016, April 20, 2016, and October 13, 2016.  (Compl. ¶ 11.)  These allegations appear to be related to his claim that he is entitled to statutory damages. SPS has attached to its motion to dismiss correspondence from Bivens dated March 25, 2015 [Doc. 7-3], February 4, 2016 [Doc. 7-4], and April 20, 2016 [Doc. 7-6]. SPS also has attached part of its response to the February 4, 2016 letter, dated March 18, 2016 [Doc. 7-5], and its response to the April 20, 2016 letter, dated June 2, 2016 [Doc. 7-7].  The Court may consider those documents because they are central to Bivens's complaint, their authenticity is not in dispute, and SPS attached

them to its motion to dismiss.[2]  *See Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284-85 (11th Cir. 2007) (noting that the Court may consider documents plaintiff refers to in the complaint that are central to the claims, as long as the contents are not in dispute and the defendant attaches the documents to the motion to dismiss).  But the Court cannot consider any outside document, even though central to Bivens's complaint, that SPS did not attach to (or even refer to in) its motion to dismiss because there has been no notice to Bivens that the Court may consider such documents.  *See Fin. Sec. Assurance*, 500 F.3d at 1285.

## B.     The Court cannot conclude that SPS notified Bivens that his request was duplicative.

RESPA "imposes a duty on servicers of mortgage loans to acknowledge and respond to inquiries from borrowers."  *Bivens v. Bank of America, N.A.*, 868 F.3d 915, 918 (citing 12 U.S.C. § 2605(e)).  When a borrower submits a QWR, the servicer must (1) provide a written response acknowledging receipt of the correspondence and (2) take other responsive actions within specified time periods.  *Id.*  A servicer is not required to respond to correspondence that does not request

---

[2] SPS also attached to its motion to dismiss a letter dated December 17, 2012 that Bivens's former counsel sent to SPS.  SPS cites this letter as background information [*see* Doc. 7-1 at 5], but because it is not central to Bivens's complaint, the Court will not consider it.

"information related to the servicing of the loan." *See Sheely v. Bank of Am. N.A.*, 36 F. Supp. 3d 1364, 1369 (N.D. Ga. 2014) (quoting 12 U.S.C. § 2605(e)(1)(A)). "And *servicing* is defined narrowly: "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan [including escrow balances] . . . and making the payments of principal and interest and other such payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.'" *Id.* (second alteration in original) (quoting 12 U.S.C. § 2605(i)(3)).

Regulation X, RESPA's primary implementing regulation, provides a detailed scheme for servicer to use when responding to requests for information. 12 C.F.R. § 1024.36.  As relevant here, within 30 days after the receipt of a borrower's QWR requesting information, the servicer must provide an appropriate response to the information request by providing the borrower with the requested information or conducting a reasonable search or the requested information and providing the borrower with written notification that the servicer has determined that the requested information is not available to the servicer. *Id.* § 1024.36(d); *see also* 12 U.S.C. § 2605(e)(2)(C).  The servicer does not need to provide the requested information or conduct an investigation if it determines, *inter alia*, that

10

the request for information is duplicative of information the servicer has already provided the borrower.  12 C.F.R. § 1024.36(f)(1)(i).  To invoke that exception, the servicer generally must provide notice of the borrower within five days of making the determination that the exception applies.  *Id.* § 1024.36(f)(2).

To state a claim under RESPA for failure to adequately respond to a QWR, a plaintiff must show that: (1) the defendant is a loan servicer, (2) the plaintiff sent the defendant a valid QWR, (3) the defendant violated RESPA by failing to adequately respond within the statutory period, and (4) the plaintiff incurred damages.  *See Katica v. Specialized Loan Servicing, LLC*, No. 1:15-CV-2957-ODE-WEJ, 2015 WL 10765188, at *5 (N.D. Ga. Dec. 1, 2015), *report and recommendation adopted*, 2016 WL 1746176 (N.D. Ga. Mar. 9, 2016).

SPS concedes that it is a loan servicer.  It also does not argue that the June 30, 2016 letter was not a QWR for purposes of § 2605(e)(1)(B), and the Court will treat it as such here.  SPS argues, however, that it adequately responded to Bivens's June 30, 2016 letter by informing him that his requests for information were duplicative of his prior requests for information.  [Doc. 7-1 at 9-17.]  The Court agrees with SPS that, as a whole, Bivens's June 30, 2016 letter was duplicative of his April 20, 2016 letter [Doc. 7-6], to which SPS responded on June 2, 2016 [Doc.

11

7-7].  Bivens's June 30, 2016 letter is different from his April 20, 2016 letter, however, in several respects: it contains a request for an explanation of each individual charge comprising his escrow balance; a request for an explanation of SPS's attempts to locate his entire account history (rather than a request for the account history itself); a request for an explanation of title cure costs and the reason those charges were assessed against his account; and a request for property inspection reports.

SPS argues that it notified Bivens of the determination that the requests were duplicative [Doc. 7-1 at 9], but such notice is not apparent in its response.  SPS stated in its response to the June 30, 2016 letter that "it would be more appropriate to refrain from providing a detailed response to you at this time" because of the ongoing litigation, but it did not state that it believed Bivens's request was duplicative of one of his previous requests to which it had responded.  (Compl. Ex. B.)  Thus, the Court cannot conclude, for purposes of the motion to dismiss, that SPS invoked the duplicative-information exception in Regulation X.

Nor is the Court persuaded that SPS did not have a duty to respond to Bivens's June 30, 2016 letter because some of the requests in that letter were similar to correspondence at issue in Bivens's 2015 case.  The requests for

12

information at issue in Bivens's June 30, 2016 letter are not identical to, or even substantially the same as, the requests for information in his March 25, 2015 letter, which is the correspondence at issue in that case. As explained above, the April 20, 2016 letter, which is also at issue in the 2015 case, is not identical to the June 30, 2016 letter, either. That is not to say that, as an evidentiary matter, the Court would read each alleged QWR that Bivens sent to SPS in a vacuum. When a borrower and servicer engage in a series of communications in response to an initial QWR, as Bivens and SPS have, it makes little sense for a Court to read a single piece of correspondence in isolation. Here, however, the Court is looking only to the legal sufficiency of the allegations in the complaint, and based on the pleadings, the Court cannot conclude that SPS properly notified Bivens that it was relying on an exception in Regulation X or that it otherwise had no duty to respond to the QWR because Bivens's June 30, 2016 request was duplicative of previous requests that were the subject of ongoing litigation.

**C.** **SPS was not required to respond most of the requests in the June 30, 2016 letter.**

The June 30, 2016 letter contained numerous requests, but SPS did not have any obligation under RESPA to respond to most of those requests. As explained above, a servicer is not required to respond to a QWR that does not request

13

"information related to the servicing of the loan."  *See Sheely*, 36 F. Supp. 3d at 1369.   The Court does not find persuasive Bivens's argument that "all of the information that servicers have, or have access to, is related to servicing."   The weight of the authority, particularly from courts in this Circuit, is that RESPA's definition of servicing is narrow, and the types of requests that relate to the servicing of the loan are correspondingly narrow.   *See id.*; *see also Jones v. Vericrest Fin., Inc.*, No. 1:11-CV-2330-TWT-CCH, 2011 WL 7025915, at *17 (N.D. Ga. Dec. 7, 2011).   Thus, proper requests for information about the servicing of the loan will generally relate to matters like the borrower's monthly payments and the application of those payments.  *See* 12 U.S.C. § 2605(i)(3).

The Court discusses each request from the June 30, 2016 letter below.

**1)  The identities of Bivens's servicers**

Bivens's first request for information was a follow-up demand for information the identity of his loan servicers:

> You still have not completely responded to the question below (especially you have not provided the documents asked for), so I am asking for the rest of the information again:
>
> > *Please tell me who are the different servicers, subservicers and master servicers, who currently are involved with this loan and provide documents showing*

14

> *their authority and responsibilities regarding this loan*
> *and when their involvement started.*

SPS was required to respond to this request only to the extent that Bivens demanded that it identify itself as his servicer. SPS was not required to respond to this request in that it sought information on master servicers and SPS's authority to service the loan. *See Kelly v. Fairon & Assocs.*, 842 F. Supp. 2d 1157, 1160 (D. Minn. 2012) (collecting cases) (concluding that requests for the identity of the master servicer do not relate to servicing).

**2) The explanation of the escrow charges**

Bivens's second request for information was as follows:

Please list all the charges that comprise the $9,999.99 charge in the account history, the date of the charge and explain the reason for each of the charges. Also please list the charges that comprise the $863.07 charge in the account history, the date of the charge and explain the reason for each of the charges.

There are sufficient factual allegations in the complaint to suggest that SPS was required to respond to this request under RESPA, because a request for an explanation of charges in an account statement relates to the periodic payments a borrower makes to his loan servicer.

### 3)  A description of attempts to locate his pre-2007 account history

Third, Bivens asked for SPS to describe its attempts to obtain his account history from his original loan servicer:

> Please describe all of the attempts you have made to obtain the account history for the time before January 16, 2007, and when you made each of these attempts.

Bivens's account history, and the question of whether the entire account history was available to SPS, was the subject of a lawsuit Bivens filed against SPS in this Court in 2015.  This request was not at all related to the servicing of Bivens's loan.  Instead, it appears to have been an attempt to obtain discovery in Bivens's 2015 case.  SPS was therefore not required to formulate any response to this request for information.

### 4)  The custodial file

Fourth, Bivens requested his "custodial file" from SPS:

> You refused to send a copy of the documents in the custodial file, even though you, the servicer, took them from the custodial bank and have them in your possession.  I am again requesting that information.

The parties do not dispute that this was a request for documents related to the origination of Bivens's loan.  Courts have held that a request to a servicer for loan origination documents is not a QWR because it does not related to the

16

servicing of the loan.  *E.g.*, *Jones*, 2011 WL 7025915, at *17.  Bivens's request for

those documents therefore did not require a response from SPS.

### 5)  The history of the transfer of the note

Bivens's fifth request was for documents related to the transfer of the note:

> You have also refused to send me any documents showing when the current holder of the note became the current holder of the note.  I am again requesting that information.

This request, like Bivens's request for his loan origination documents, is not

related to the servicing of the loan.  *See Wolfbauer v. Ocwen Loan Servicing, LLC*,

No. 4:15CV3141, 2016 WL 1170982, at *3 (D. Neb. Mar. 24, 2016) ("An inquiry

about the validity, ownership, transfer, assignment, or potential modification of a

loan is not 'related to the servicing' of the loan and does not constitute a QWR.").

Thus, no response was required.

### 6)  The entire trust agreement

The sixth request, like the first and fifth, was about ownership of his

promissory note and SPS's authority to service the loan:

> I am asking again for the rest of the trust agreement that you sent the front page from, especially the part that shows whether my loan is in the trust.

Thus, no response was required.

### 7) An explanation of title cure costs

Seventh, Bivens demanded:

Please explain what "title cure costs" are and why they were charged to my account.

This request appears to seek information concerning a charge assessed against Bivens's account, which was eventually reversed several years after it was applied to his account. [*See* Doc. 7-7.] SPS argues that the "title cure costs" were incurred by Bivens's prior servicer and were not passed along to Bivens. Thus, it argues, the costs were not related to servicing. [Doc. 7-1 at 16.] On a motion to dismiss, the Court cannot rely on SPS's assertions about what title cure costs are and whether the charges were passed along to Bivens. Because Bivens was requesting information about a charge to his account, this request appears to relate to the servicing of his loan.

### 8) Copies of property inspection reports

In his eighth request, Bivens stated:

Finally, please send me copies of all the property inspection reports.

SPS was not required to respond to this request because property inspection reports are not related to the servicing of the loan. *See Ward v. Sec. Atl. Mortg. Elec. Registration Sys., Inc.*, 858 F. Supp. 2d 561, 574 (E.D.N.C. 2012) (letter sent

to servicer requesting, *inter alia*, copies of property inspection reports was not a QWR); *Jones*, 2011 WL 7025915, at *4, *16 (same). *But see Miranda v. Ocwen Loan Servicing, LLC*, 148 F. Supp. 3d 1349, 1352, 1354 (S.D. Fla. 2015) (treating a request for property inspection reports as a QWR where loan servicer did not challenge the point).  Notably, Bivens did not ask for an explanation of property inspection charges to his account.  The inspection reports themselves are not related to his periodic payments to SPS.

In sum, SPS was not required to respond to most of the requests in Bivens's June 30, 2016 letter, but his complaint contains sufficient factual material suggesting that SPS was required to respond, at least in part, to his first, second, and seventh requests for information in the June 30, 2016 letter.

**D.    Bivens's complaint plausibly suggests that he was damaged by SPS's failure to adequately respond to two of his requests for information.**

The Court cannot conclude, at this stage in the proceedings, that SPS's response to the June 30, 2016 letter was appropriate under RESPA as to every request to which it was required to respond.  As explained above, three of the requests appear to relate, at least in part, to the servicing of the loan.  Regarding first request, SPS properly informed Bivens in its response to his June 30, 2016

19

letter that it was his loan servicer. (Compl. Ex. B.) No further response was required. SPS also previously told Bivens, in its response to his February 4, 2016 letter, that it was his loan servicer and was the master servicer on his loan. Bivens cannot plausibly allege that he was damaged by SPS's failure to explain something he already knew. *See Perron ex rel. Jackson v. J.P. Morgan Chase Bank, N.A.*, 845 F.3d 852, 858 (7th Cir. 2017).

Nevertheless, Bivens's complaint contains sufficient factual material that, if proven, would suggest that SPS did not adequately respond to his second and eighth requests, which demanded explanations of the charges against his escrow balance carried over from Bank of America and the title cure charges assessed to his account.[3] To that end, SPS argues that Bivens cannot show any actual damages because he was in litigation with SPS at the time he received the allegedly deficient response to his June 30, 2016. The Court cannot consider, at this stage in the

---

[3] The Court, Bivens, and SPS are all well aware that Bivens had a complete account statement from Bank of America showing every charge applied against his escrow balance, long before he demanded that SPS explain every charge in his escrow account. That account statement is in the record of Bivens's 2015 case, and another version of the account statement is attached to the complaint in his 2014 case. On a motion to dismiss, however, the Court cannot rely on outside evidence that Defendant has not attached to its motion to dismiss or even referred to in its motion to dismiss.

proceedings, Bivens's reasons for sending SPS a QWR seeking certain information about his loan, rather than seeking that information in discovery in another case. The question of Bivens's good faith may be in issue at summary judgment, but it is not properly before the Court on a motion to dismiss.

To that point, Bivens's June 30, 2016 letter states in part:

> In a letter I sent you on April, 2016, I asked for information, and you sent some information, but did not send some of the requested information.  I have detailed the missing information below.

Bivens's June 30, 2016 letter was, primarily, a notice that he was not satisfied with SPS's previous response to his April 20, 2016 correspondence.  Only by comparing the correspondence side-by-side could SPS have seen that Bivens had buried different and new requests for information in his June 30, 2016 letter. The Court takes a dim view of Bivens's manner of communicating with SPS in his June 30, 2016 letter.  *See Banayan v. OneWest Bank F.S.B.*, 2012 WL 896206, at *7 (S.D. Cal. Mar. 14, 2012) (contemplating a situation where "borrowers could pretty easily draw a RESPA foul simply by inundating a lender with qualified written requests until they receive a single unsatisfying response").  As stated above, however, Bivens's reasons for sending the QWR are outside the scope of the pleadings, and the Court cannot consider them here.

21

SPS also argues that Bivens cannot show how any of his requests for information are related to making loan payments or to an error in his account. That question, like the question of good faith, may be relevant at summary judgment, but the Court cannot consider it here. Whether Bivens intended to make loan payments or believed there was an error in his account is outside the scope of the factual allegations in the complaint and the documents attached thereto.

Finally, SPS argues that Bivens has not shown that he is entitled to statutory damages, and no class can be certified in this case because Bivens does not have a viable individual claim, but those arguments depend on SPS's contention that he cannot show actual damages. Because the Court concludes that Bivens has adequately pleaded actual damages, those arguments are without merit. The Court otherwise makes no comment about the sufficiency of the allegations that Bivens is entitled to statutory damages or the viability of class certification in this case.

## V.   CONCLUSION

For the foregoing reasons, the Court concludes that the allegations in Bivens's complaint, if proven, plausibly suggest that SPS did not properly respond to his June 30, 2016 correspondence under RESPA, and that he was damaged by that failure to respond. The Court therefore **RECOMMENDS** that the motion to

dismiss be **DENIED**.  [Doc. 7.]  This matter is set for a scheduling conference to be held on January 4, 2018, at 10:00 a.m.

IT IS SO ORDERED AND RECOMMENDED this 18th day of December, 2017.

_____
JOHN K. LARKINS III
United States Magistrate Judge